<u>**NOT FOR PUBLICATION**</u>

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**FILED**
JEANNE A. NAUGHTON, CLERK

JAN 1 0 2018

U.S. BANKRUPTCY COURT
CAMDEN, N.J.
BY_____ DEPUTY

| | |
|---|---|
| In Re: | Case No.:  17-15532-ABA |
| Joy R. Denby-Peterson | Chapter:  13 |
| Debtor. | Judge:  Andrew B. Altenburg, Jr. |

## MEMORANDUM DECISION

At a plenary hearing held August 16, 2017 on Joy Denby-Peterson's (the "Debtor") Motion for Return of Repossessed Auto and for Sanctions for Violation of Automatic Stay, the parties agreed that the issue of damages would be bifurcated from the hearing on liability. Doc. No. 55, transcript, pp. 88-89. The court issued a Memorandum Decision and Order as to liability on October 20, 2017, *In re Denby-Peterson*, 576 B.R. 66 (Bankr. D.N.J. 2017) ("Opinion"), granting turnover of the Debtor's vehicle and personal property, but denying violation of the automatic stay in connection with the vehicle.[1] In its Opinion, the court ordered Pine Valley Motors and/or NU2U Auto World (the "Creditors"), to return the personal property that had been left in her vehicle to the Debtor within seven days. *Id.*, at 68, 83. The Creditors did not return anything.

The only issue addressed in this Memorandum Decision is the issue of damages for the Creditors' failure to return the personal property. The parties subsequently submitted arguments for and against damages in connection with the failure to return the personal property. Having confirmed that counsel preferred that the court decide the matter on the papers rather than hold another plenary hearing, the court finds that the parties have waived the opportunity to present oral testimony and that the matter is now ripe for decision. The following constitutes this court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

The Debtor seeks damages as follows:

- $120.00 for a cab to take her to NU2U Auto World on April 4, 2017
- $750.00 cash
- $170.00 to replace eyeglasses
- $359.75 for school books
- $100.00 for a stethoscope
- $100.00 documentation (nursing and driver's license, diploma, etc.)

---

[1] The Opinion, at Doc. No. 63 on the Court's Docket and as it pertains to the personal property, is incorporated herein.

Doc. No. 78, pp. 1, 3.

In addition, the Debtor complains of the following in connection with the vehicle:

- "significant" scratch in the paint on the side of the car
- Destruction of the license plate frame
- Dirty oil requiring an oil change; $270.31
- 3/4 tank less gasoline
- 1,000 additional miles on the odometer
- Low air pressure in all four tires, "risking damages to them that could have been prevented."

*Id.*, p. 2.

Finally, the Debtor alleges she incurred attorneys' fees and costs in the amount of $36,324.22. She asks that the court enter an award of punitive damages for the Creditors' "unconscionable conduct, . . . the deplorable condition they left the vehicle in and their flagrant violation of this Court's orders." *Id.*, p. 3.

The Creditors respond that since they were unable, rather than unwilling, to return the personal property to the Debtor, they should not be sanctioned for contempt. They argue that damages should be limited to the loss to the Debtor for the property not returned. As for counsel fees and costs, they point out that the Debtor submitted billing attributable to her motion for return of the vehicle and the alleged violation of the automatic stay rather than just concerning the personal property. The Creditors argue that the court did not find any bad faith or fraud on their part concerning the return of the personal property, thus they should not be sanctioned as it was not established that their conduct was abusive of the judicial process.

Specifically concerning the personal property, the Creditors submit that though the Debtor testified that she had in the vehicle her school books, nursing license, medical information, debit card, $750 in cash, prescription eyeglasses, and high school and nursing diplomas, she failed to present evidence regarding the cost to replace most of those items other than the driver's license, eyeglasses, oil change, and cab fare. She never testified regarding a stethoscope. The oil change concerns general maintenance to the vehicle and is not related to any damages of her personal property. The Creditors object to her claim of the loss of $750 in cash allegedly left in the vehicle.

The court agrees to great extent with the Creditors regarding the replacement cost of the personal property items, but disagrees regarding punitive damages.

Though the Creditors could not violate the stay in connection with the personal property if they did not possess that property after the bankruptcy filing, here the Creditors completely lack credibility with regard to their position that they returned the personal property and/or are not in possession of it. The court had the opportunity to assess the testimony of the Creditors' witnesses for credibility. Simply put, their testimony was not believable and in fact, contradictory at times. The evidence showed that: the Creditors completely ignored their normal procedures with regard to return of the personal property; there is no signed receipt for a return of the personal property as is typical in their repossession situations; there was no notice of disposition of the personal property as required by the parties' contract and law; and there was no evidence of a key being

returned for this expensive vehicle in exchange for a return of the personal property which was a tactic employed routinely by the Creditors. The issue of the return of the personal property was brought up the very first day, April 4, 2017, the parties were in court. The Creditors had months to prepare for trial yet they produced nothing that convinced this court that the personal property was returned to the Debtor. Their absolute disregard for their own procedures, coupled with their contradicting testimony, leads the court to believe that their testimony lacked veracity as to the return any personal property to the Debtor. Perhaps their failure to do so is a litigation tactic to avoid more serious damages but the court does not believe the Creditors.

Most troubling, on April 4, 2017, a return of the personal property was fully discussed on the record. It was agreed that the personal property would be returned and in fact, the court ordered its immediate return. There was no suggestion that the personal property was not in the possession of the Creditors, a fact that should have been disclosed immediately. Certainly Creditors' counsel's acquiescence to an immediate return of the personal property led the court to believe that the Creditors were in possession of the personal property. It was also clear that the Debtor would immediately appear at the Creditors' location to retrieve her personal property from them. The parties were instructed to make appropriate arrangements and they agreed that they would. The issue was resolved as far as the court was concerned.

The Creditors' position that they were not in possession of the personal property on that date directly conflicts with their conduct in court on April 4. Moreover, if they did not possess the personal property, then "why they would make the Debtor go on a wild goose chase after the bankruptcy was filed if they were certain they did not have the personal property." Opinion, at 83. Why did the Debtor have to spend money on cab fare and take the time seeking to retrieve her personal property if the Creditors claim they did not have it? Was it an attempt to harass the Debtor? Whatever the Creditors' reason, it was bad conduct and an abuse of the bankruptcy process. It is oppressive to this Debtor who is trying to get her life back together through her chapter 13 case.

The court may sanction a party for its bad faith conduct under its inherent powers under section 105 of the Bankruptcy Code.[2] *In re 680 Fifth Ave. Assocs.*, 218 B.R. 305, 323 (Bankr. S.D.N.Y. 1998). "Bankruptcy courts have the same inherent sanction authority as district courts." *Id.* Importantly, the court need not have to find actual bad faith before sanctioning the Creditors under its inherent powers. *See Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74 n.11 (3d Cir. 1994); *United States v. Seltzer*, 227 F.3d 36, 41 (2d Cir. 2000). *See also In re Hill*, 437 B.R. 503, 523 (Bankr. W.D. Pa. 2010) (citing *Martin v. Brown*, 63 F.3d 1252 (3d Cir. 1995) and recognizing in that case "the court noted that there was some discrepancy in Third Circuit

---

[2] Section 105(a) of the Bankruptcy Code provides in pertinent part that a bankruptcy court:

> may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title ... shall be construed to preclude the court from, *sua sponte,* taking any action or making any determination necessary or appropriate to ... prevent an abuse of process.

precedent as to whether a specific finding of 'bad faith' is required to impose a sanction under the inherent authority. *Id.* at 1265."). Notwithstanding the foregoing, willful improper conduct constitutes bad faith. *In re Fjeldsted*, 293 B.R. 12, 26 (B.A.P. 9th Cir. 2003). Likewise, a lack of candor itself subjects a party to sanctions under section 105. *In re Bartmann*, 320 B.R. 725, 750 (Bankr. N.D. Okla. 2004); *In re Rivera*, 369 B.R. 193, 201 (Bankr. D.N.J. 2007). Indeed, a lack of candor can also support a finding of bad faith. *In re Doble*, No. ADV 10-90308-MM, 2011 WL 1465559, at *5 (Bankr. S.D. Cal. Apr. 14, 2011).

This court may use its inherent power to sanction the Creditors for their lack of candor and bad conduct. Of course, its "inherent power 'should be reserved for those cases in which the conduct of a party or an attorney is egregious and no other basis for sanctions exists.'" *Id.* The American Heritage Dictionary defines "egregious" as "conspicuously bad or offensive." *In re Hill*, 437 B.R. at 523 (citing *Martin v. Brown*, 63 F.3d 1252, 1265). The court finds the Creditors' lack of truthfulness, lack of candor to the court on April 4, and conduct towards the Debtor in making her go on a wild goose chase, was willful, conspicuously bad, offensive, improper, harassing and an abuse of the process. Punitive damages are warranted. The court will award $1,000 to the Debtor.

The court also finds that due to the Creditors' conduct with regard to the turnover of the personal property, an award of attorney fees and costs is warranted. However, for purposes of this decision, those damages must be limited to the request seeking turnover of the personal property. Unfortunately, the Debtor submitted billing attributable to her entire motion for return of the vehicle and the alleged violation of the automatic stay rather than just concerning the personal property. This leaves the court with the task of determining what the appropriate damage is[3]—it is certainly not an award of all attorneys' fees and costs for the entire matter.

As to fees and costs, the Court must conduct an objective inquiry based upon what services a reasonable lawyer or legal firm would have performed in the same circumstances. *In re Fleming Companies, Inc.*, 304 B.R. 85, 89–90 (Bankr. D. Del. 2003). A "judge's experience with fee petitions and his or her expert judgment pertaining to appropriate billing practices, founded on an understanding of the legal profession, will be the starting point for any analysis." *Id.* (citing *In re Busy Beaver Building Centers, Inc.*, 19 F.3d 833, 854 (3d Cir. 1994). The court should then consider any evidence submitted with the application or at a hearing. *Id.* When making its consideration, the court is not required to make a line-by-line analysis of the fee application and a sampling will suffice. *In re Maruko Inc.*, 160 B.R. 633, 642 645 (Bankr. S.D. Cal. 1993) (citing *In re Bank of New England Corp.*, 142 B.R. 584, 586 (D. Mass. 1992)) and *Lindy Bros. Builders of Philadelphia v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102 (3d Cir. 1976). "Because its time is precious, the reviewing court need only correct reasonably discernible abuses, not pin

---

[3] The court notes that in her original motion, Doc. No. 5, the Debtor did not make a demand for turnover of the personal property. It was not until the actual hearing on April 4 did counsel for the Debtor advise the court that the Debtor was also making a demand for turnover of the personal property. Thus, the court will not consider the time expended by Debtor's counsel, identified on Exhibit C to the Motion, Doc. No. 5-4, as part of the damages.

down to the nearest dollar the precise fee to which the professional is ideally entitled." *Busy Beaver*, 19 F.3d at 844-45.

To be sure, as a result of the Creditors' bad conduct, the Debtor was required to incur fees and costs in connection with investigating the status of the personal property and presenting her testimony at trial. Unfortunately, Debtor's counsel's billing records in no way assist the court in determining what the amount of those fees and costs are. The court is not required to undertake a line-by-line analysis to determine what exact fees must be included or excluded.

The court is making an objective inquiry based upon the services performed and evidence submitted. Indeed it is near impossible to determine from the billing statement submitted exactly what time was specifically spent on the turnover of the personal property issue. Without question, time was spent on the issue, including time at trial. But the court cannot itemize the time. In its experience, the best way to determine the appropriate amount is by applying a percentage to the time spent. It not uncommon to allow fees based upon a percentage of the tasks performed. *See Bennett v. Castro*, 74 F. Supp. 3d 382, 402 (D.D.C. 2014); *Meecorp Capital Markets, LLC v. PSC of Two Harbors, LLC*, CIV. 09-2067 DWF/LIB, 2012 WL 90109, at *1, *2 (D. Minn. Jan. 11, 2012); *In re Polo Builders, Inc.*, 397 B.R. 396, 413–14 (Bankr. N.D. Ill. 2008); *LaPlante v. Estano*, 3:04-CV-322CFD, 2007 WL 2789429, at *3–4 (D. Conn. Sept. 25, 2007), *adopted as modified*, 3:04CV322 (CFD), 2008 WL 1817979 (D. Conn. Apr. 22, 2008); *In re Olson*, 325 B.R. 791, 802 (Bankr. N.D. Iowa 2005); *In re Zimmerman*, 92-2868-BKC-3F7, 1997 WL 589002, at *2 (Bankr. M.D. Fla. Mar. 20, 1997).

The main focus of the trial was the turnover of the vehicle and the alleged violation of the automatic stay. The court feels that the personal property issue was a minimal part of the process and determines that an allowance of ten percent of fees and costs is appropriate. Total fees asserted were $33,649.20. The court will grant fees to the Debtor in the amount of $3,365.00. Total expenses were $3,453.62. It appears some of those expenses were totally unrelated to the Motion (like $40 in Bankruptcy Credit Reports on 4/1/17) and do not belong in the Debtor's request for costs. The court will allow costs to the Debtor in the amount of $300.

As for actual damages, the court notes that the burden of proving what property was in the vehicle and its value is on the Debtor. *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1176 (3d Cir. 1993). *See Caldwell v. Haynes*, 136 N.J. 422, 436 (1994). The court also places on the Debtor a duty to mitigate damages. It previously noted that her alleged inability to work due to not having her vehicle was a damage related to turnover of the vehicle that the court would not sanction. Opinion, at 83. In addition, unless she could show that she needed those personal possessions in order to work, the loss of wages might not be part of any damages. *Id.*, at 84. Finally it notes that it did not specifically find what possessions the Debtor had in her vehicle at the time of repossession, only that she had personal possessions in the vehicle. *See id.*, at 73 (stating that Debtor testified to having certain items in her vehicle) and 74 (finding that it was more likely than not that the property was not returned to her).

Turning to her specific requests, the court finds that the Debtor is entitled to $120 for the April 4, 2017 cab ride to reclaim her personal property. She is also entitled to $11 to obtain a new driver's license. As for the other lost documents (nursing licenses, diploma, SSN), she submitted no proof of the cost to her to replace these.

The court will also deny reimbursement of the alleged loss of $750 in cash as she provided no support for having $750 in cash in the vehicle at the time. The court surmises that she could have filed a copy of her bank statement showing a $750 withdrawal, or testified that she routinely kept that amount in cash, or had some other reason for having $750 in cash. But she filed nothing and waived her right to testify as to damages. Her testimony at trial was less than convincing. As stated above, the burden is on a plaintiff to prove damages to a reasonable degree of certainty by proper evidence, a burden she did not meet here.

Similarly, the bill she submitted as proof of the cost of her prescription eyeglasses only shows the $170 she originally paid for them in 2012-2013. She submitted no proof of what they cost or that she has replaced them. Likewise, she submitted no evidence supporting either that she replaced her school books or the cost to do so. And as pointed out by the Creditors, this is the first time the court has heard about a stethoscope being in the vehicle. The court denies any damages for these items.

Finally, the Debtor alleges damages to the vehicle. However, the court's Opinion granted turnover of the vehicle and damages only for the lost personal property. *Id.*, at 84. Even if the court were to award actual damages for the oil change, the $270 invoice submitted by the Debtor includes charges for other services; the oil and filter change only cost $47.95. The other alleged damages—scratches, amount of fuel, odometer reading and low tire pressure—would have needed testimony to substantiate. The Debtor chose not to provide testimony and no damages can be awarded.

## CONCLUSION

In sum then, the court awards the Debtor $131 in actual damages, $1,000 in punitive damages and $3,365 in fees and $300 in costs.[4]

An appropriate judgment has been entered consistent with this decision.

The court reserves the right to revise its findings of fact and conclusions of law.

/s/ Andrew B. Altenburg, Jr.
United States Bankruptcy Judge

Dated: January 10, 2018

---

[4] Nothing herein prevents the Debtor from recovering any damages that may exist under state or federal law not applicable to this proceeding.